# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**JENNIFER JOHNS,**
**Claimant Below, Petitioner**

**FILED**

February 3, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 16-0186** (BOR Appeal No. 2050584)
(Claim No. 2014008533)

**THOMAS HEALTH SYSTEM, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jennifer Johns, by Patrick K. Maroney, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Thomas Health System, Inc., by Timothy E. Huffman, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated February 3, 2016, in which the Board affirmed a June 4, 2015, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's September 22, 2014, decision which found no evidence to support an indemnity claim. In its Order, the Office of Judges also affirmed the claims administrator's March 28, 2014, denial of a request for neurosurgery and a pain clinic. The Office of Judges also affirmed the claims administrator's January 21, 2015, request for additional treatment and referral to Iraj Derkashan, M.D. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Johns, a certified nursing assistant, was injured in the course of her employment on September 15, 2013, when a patient fell on her neck. The record indicates the claim was held compensable for cervical sprain/strain. The employees and physician's report of injury indicates Ms. Johns suffered a neck sprain after a patient fell on her. Treatment notes from Saint Francis

1

Hospital emergency room indicate Ms. Johns was diagnosed with a neck sprain. A cervical CT scan showed degenerative changes.

Ms. Johns has a long history of cervical spine problems. August 30, 2011, treatment notes from Boone Memorial Hospital emergency room indicate she was seen for ongoing neck pain for eight months that had worsened in the last week. She reported numbness, redness, and burning in her hands. On September 9, 2011, she sought treatment at Boone Memorial RHC for neck pain and chronic back pain. She was diagnosed with cervicalgia. September 14, 2011, treatment notes from MedExpress indicate Ms. Johns was treated for pain in the neck and arm that radiated into the left shoulder. She reported a lifting injury involving her neck. She was diagnosed with neck pain. She sought treatment that same day from Boone Memorial Hospital emergency room where she was assessed with a cervical sprain.

On September 19, 2011, Ms. Johns was treated at Boone Memorial Hospital Medical Clinic for a lifting injury involving her neck. She stated that she was lifting a patient and had sudden pain in her neck. She was diagnosed with cervical strain. She was treated with physical therapy and medication. On October 5, 2011, she reported that her neck pain had increased. Moving her neck caused numbness and pain. She was diagnosed with neck pain secondary to cervical strain with possible nerve impingement or encroachment. On October 17, 2011, an MRI showed bulging discs at C3-4, C5-6, and C6-7.

A May 28, 2013, treatment note from Saint Francis Hospital emergency room indicates Ms. Johns fell back and hit her head four days prior, injuring her neck. She reported chronic neck pain since a motor vehicle accident three years prior. She was diagnosed with neck strain. She sought treatment again two months later and a note from Saint Francis Hospital emergency room indicates she had pain in her right shoulder, elbow, and leg after a fall. She was diagnosed with lower back and cervical sprains. An employees' and physicians' report of injury was completed at that time. Ms. Johns stated that she slipped and fell in a puddle in the restroom at work. She listed injuries to her shoulder, back, spine, arm, elbow, leg, and neck. Finally, on September 10, 2013, five days before the compensable injury in this claim, Ms. Johns was treated at MedExpress for fever, cough, congestion, pain, and neck pain. It was noted that she had a bulging disc in her neck for three years and chronic neck pain. She was diagnosed with neck sprain and respiratory infection.

Ms. Johns underwent treatment at Charleston Physical Therapy Solutions from September 25, 2013, through October 24, 2013, for the compensable injury in this claim. The notes indicate she presented with decreased and painful cervical range of motion. The symptoms suggested a displacement within the cervical spine referring symptoms to the left shoulder. Ms. Johns completed six physical therapy visits and reported that she was pain free with full function at the last visit.

Ms. Johns regularly sought treatment at MedExpress. A note dated October 13, 2013, indicates she was seen for pain in her neck and numbness and weakness in her extremities. The note indicates this was an exacerbation of a chronic issue. On November 12, 2013, she was seen for pain in her neck and back that radiated to her left leg. She reported an old injury in which she

fractured vertebrae of the cervical spine. She stated that her pain was not severe. She was assessed with lumbar sprain/strain, neck sprain/strain, radiculopathy of the arm, paresthesia, and radiculopathy of the leg. On December 4, 2013, Ms. Johns was treated for neck pain. She was diagnosed with neck sprain and instructed to return to work with no restrictions.

On January 5, 2014, Ms. Johns sought treatment at Saint Francis Hospital emergency food for ongoing neck pain. She noted that she turned her head to the right at work that day and her neck just popped. X-rays of the cervical spine showed mild degenerative changes, more prominent at C5-6, with posterior osteophyte formation. She was diagnosed with neck sprain. On January 9, 2014, Ms. Johns was treated at MedExpress where she was diagnosed with radiculopathy and released to return to work on modified duty on January 10, 2014.

In a January 9, 2014, reopening application for temporary total disability benefits, the current diagnosis was listed as cervical radiculopathy. An aggravation or progression of Ms. Johns's disability was reported and authorization was requested for referral to neurosurgery and a cervical MRI. The disability period was from January 9, 2014, through March 9, 2014. A second application was submitted on January 14, 2014, indicating Ms. Johns was temporarily and totally disabled from January 9, 2014, through March 9, 2014, due to cervical radiculopathy. It was also indicated that she needed a neurosurgical referral and a cervical MRI.

A January 16, 2014, cervical MRI revealed mild degenerative changes, osteophyte disc complex at C2-3, a small paracentral disc protrusion at C5-6, and a small annular tear at C6-7. Rebecca Thaxton, M.D., considered the MRI in her February 3, 2014, physician review in which she recommended the request for neurosurgery referral and a pain clinic consultation be denied. She found Ms. Johns had exceeded West Virginia Code of State Rules § 85-20 (2006) treatment guidelines for a cervical sprain. She had returned to work. Dr. Thaxton noted a pre-claim history of chronic neck pain and pain clinic treatment for such. She found that the MRI showed degenerative changes and stated that the neurosurgical appointment and pain clinic referral would be to evaluate the symptoms caused by the degenerative disease, not the compensable injury.

Ms. Johns was next treated at Hope Clinic. Notes indicate she still had severe neck pain on March 17, 2014. The assessment was C5-6 herniated disc with annular tear and spinal stenosis. She was referred to neurology. On April 10, 2014, a return to work report from MedExpress indicates Ms. Johns was placed on modified duty as of April 10, 2014. Her diagnoses were listed as radiculopathy, neck pain, and cervical disc displacement. On April 14, 2014, Ms. Johns stated in a treatment note by Hope Clinic that her medications still were not working. The assessment was degenerative disc disease, osteoarthritis, whiplash, and neck pain. An authorization request was submitted by Hope Clinic for a referral to a neurosurgeon for ongoing medical problems related to the September 15, 2013, work injury. A final request was made by David Ferrell, M.D., from MedExpress, on April 29, 2014, for a neurosurgical consultation based on Ms. Johns's symptoms and MRI.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation of Ms. Johns on June 12, 2014. Dr. Mukkamala noted in his evaluation that the compensable condition

was neck sprain. His diagnosis was cervical sprain and he found that Ms. Johns was at maximum medical improvement. He opined that she required no further treatment for the compensable injury and assessed 8% whole person impairment.

On October 17, 2014, Syam Stoll, M.D., performed a physician review in which he recommended the referral to pain management with Dr. Derkashan be denied. He opined that any further treatment, including medical, surgical, and therapy, cease immediately. He found Ms. Johns was at maximum medical improvement and had resumed full work duties without medical treatment for six months.

A final independent medical evaluation was performed by Paul Bachwitt, M.D., on December 18, 2014. Dr. Bachwitt noted the compensable condition of cervical sprain/strain, specifically referring to a September 20, 2013, Order of the claims administrator. Dr. Bachwitt opined the case was properly closed for temporary total disability benefits. He noted that most of Ms. Johns's symptoms were related to old arthritic changes and a motor vehicle accident she was in at age nineteen. He opined that her simple cervical sprain was superimposed on pre-existing degenerative changes which should have resolved within two to three months. He further opined that it was appropriate to deny the request for a pain clinic and neurosurgical referral. He found that she had no particular areas of tenderness or findings that could be treated by a pain clinic nor did she have any clinical findings of an operative disc lesion that would need neurosurgical treatment. He assessed 8% impairment.

On March 28, 2015, the claims administrator denied a request for neurosurgery and a pain clinic visit. On September 22, 2014, it found no evidence to support an indemnity claim. On January 21, 2015, the claims administrator denied a request for recommendations for additional treatment and referral to Dr. Derkashan. The Office of Judges affirmed the claims administrator's decisions on June 4, 2015.

The Office of Judges found that the claim was never closed for temporary total disability benefits and therefore, Ms. Johns was not required to show a progression or aggravation of her condition. The issue at hand was therefore whether she was entitled to temporary total disability benefits. The Office of Judges stated that the request for temporary total disability was based upon the claim reopening application dated January 14, 2014. In response, the claims administrator issued a letter dated February 21, 2014, stating the claim had never been closed for temporary total disability benefits. Seven months later, it issued the September 22, 2014, corrected Order stating that the claim was never closed and that there was no evidence to support a lost/indemnity claim. This Order is in litigation in this case.

The Office of Judges determined that no Orders or decisions were submitted indicating the compensable condition in the claim. However, the report of Dr. Bachwitt listed the compensable condition as cervical sprain/strain, referring specifically to a claims administrator decision holding the condition compensable. Further, judicial notice was given to a May 19, 2015, Office of Judges Order which found that the only compensable condition in the claim was cervical sprain/strain. The Office of Judges determined that the evidence of record does not establish that Ms. Johns is unable to work due to her compensable injury. The reopening

4

application for temporary total disability benefits indicated the disability was due to cervical radiculopathy, a non-compensable condition. A treatment note from MedExpress dated April 10, 2014, indicated her restrictions were due to radiculopathy, neck pain, and cervical disc displacement, all non-compensable conditions. The Office of Judges found that Dr. Burke authored a report on April 14, 2014, stating he believed that Ms. Johns's ongoing problems were related to the compensable injury. However, his assessment of her condition included the diagnoses of degenerative disc disease and osteoarthritis, non-compensable conditions. Furthermore, the Office of Judges determined the request for temporary total disability coincides with an intervening injury sustained on January 5, 2014. Treatment notes from St. Francis Hospital indicate Ms. Johns was at work when she turned her head and her neck popped. Based upon the evidence, the Office of Judges concluded that she was not entitled to temporary total disability benefits.

The Office of Judges next turned to the March 28, 2014, claims administrator decision denying authorization for a neurological consultation and pain clinic referral and the January 21, 2015, denial of additional treatment and referral to Dr. Derkashan. The Office of Judges determined that the estimated duration of care for a sprain/strain is eight weeks per West Virginia Code of State Rules § 85-20-35.5 (2006). The requests for treatment were made four and thirteen months after the injury, respectively. The treatment exceeds the guidelines and the Office of Judges found that Ms. Johns has not established an extraordinary case that would allow for additional treatment outside the guidelines per West Virginia Code of State Rules § 85-20-4.1 (2006). The Office of Judges further determined that she failed to establish that the treatment was necessary for a compensable injury. The requested neurosurgical consultation and pain clinic referral were based upon the diagnosis of radiculopathy, a non-compensable condition. Dr. Ferrell, of MedExpress, requested a neurosurgery consultation on April 29, 2014, based on Ms. Johns's symptoms and the MRI report. The MRI showed degenerative changes, a disc protrusion, and an annular tear. None of the conditions are compensable.

The Office of Judges further determined that the request for additional treatment and referral to Dr. Derkashan was made for the diagnosis of neck pain. Though neck pain is a symptom, not a diagnosis, the Office of Judges found that it was unrelated to the compensable injury. It determined that Ms. Johns's existing pain was likely the result of her pre-existing conditions. The Office of Judges stated that its findings were supported by the reports of Dr. Mukkamala, Dr. Bachwitt, and Dr. Thaxton who all determined that she required no further treatment for her compensable sprain/strain. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on February 3, 2016.

After review, we agree with the reasoning of the Office of Judges and conclusions of the Board of Review. Ms. Johns requested medical benefits and temporary total disability benefits for conditions that have not been held compensable in this claim. She had serious pre-existing degenerative changes and cervical spine conditions that are not related to the compensable injury. She sustained a simple cervical sprain/strain as a result of her compensable injury, which should have resolved long ago.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: February 3, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Menis E. Ketchum